IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOPE RISING COMMUNITY CHURCH, | ) | |
| Plaintiff, | ) | Civil Action No. 15-1165 |
| | ) | |
| v. | ) | Magistrate Judge Robert C. Mitchell/ |
| | ) | District Judge David S. Cercone |
| MUNICIPALITY OF PENN HILLS, | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

**I. RECOMMENDATION**

Presently before the Court is Plaintiff Hope Rising Community Church's Motion for Preliminary Injunction [ECF No. 12]. The motion is fully briefed, a hearing was held on October 8, 2015 and the matter is ripe for disposition. For the following reasons, it is respectfully recommended that Plaintiff's motion be granted on the basis that it is likely to succeed on its RLUIPA Equal Terms claim.

**II. REPORT**

a. Background

Hope Rising Community Church, (the "Church") located in Penn Hills, Pennsylvania, is a church organized by Pastor Harry Hoff in or about 2013, whose members assemble to gather and worship together under the Christian tradition. The Church is incorporated as a non-profit organization under Pennsylvania law and has secured tax exempt status from the Internal Revenue Service under section 501(c)(3). The Church states that an essential component of its religious exercise is gathering together for weekly church services as one body of believers.

Initially, the Church held services at the Penn Hebron Garden Club in Penn Hills, but in

or about summer of 2014, due to a growth in attendance at services, it was necessary for the Church to locate a new facility. On or about August 8, 2014, the Church signed a three-year lease to use a warehouse building located on 1405 Frey Road, Penn Hills, Pennsylvania (the "Property"). It is disputed whether Pastor Hoff received permission, implicit or otherwise, from the Penn Hills Department of Planning and Economic Development to hold Sunday worship services at the Property before entering into the lease. Pastor Hoff testified that the Planning Department informed him that he would be able to use the Property for church assembly, while the City Planning Department testified that it informed Pastor Hoff that the location could not be used for church assembly. After the lease was signed, the Church spent over $7,000.00 on renovations to the Property; its members donated approximately $10,000.00 of materials and equipment and donated over 400 hours of labor to complete the renovations.

On or about August 11, 2014, the Property owner, Robert Verona, submitted an Occupancy Permit Application on behalf of the Church to the City to permit the Church to occupy the property. The City initially inspected the Property on August 29, 2014, and conducted a final inspection of the Property on September 26, 2014 and issued an Occupancy Permit. The Occupancy Permit states: "Kind of Dwelling, Building or Establishment: Commercial/B." *See* Occupancy Permit [ECF No. 12-6]. In or around January 2015, Pastor Hoff was informed by Mr. Verona that the City contacted him and advised him that it would not allow the Church to continue holding worship assembly services at the Property. Pastor Hoff then met with Penn Hills building official, John McCafferty, Penn Hills code enforcement officer Catherine Zegarelli, Penn Hills fire marshal, Charles Miller and two others who ordered Pastor Hoff to stop holding church services by March 1, 2015. The Church also received a violation notice that same day from the City demanding that "all church services and large group

2

assemblies cease and desist by March 1, 2015." Pl.'s Statement of Material Fact ("SMF") [ECF 12-2] at ¶ 23.

The Penn Hills Zoning Ordinance (the "Zoning Ordinance") divides Penn Hills into separate zoning use districts. For each district, the Zoning Ordinance provides permitted uses and conditional uses. Permitted uses are available as a right, while conditional uses must meet certain delineated criteria. Churches and other religious assemblies are not a permitted use in any zoning district in the City, but rather are considered conditional uses in Residential Districts only. *See* Zoning Ordinance [ECF No. 12-7] at § 5.12. Additionally, the Ordinance imposes specific requirements on some of the conditional uses, including churches and religious worship institutions.[1] While the Zoning Ordinance imposes some specific requirements on conditional uses, it also provides a process in which special exceptions can be made to the desired use. *See id.* at § 12.

The Property in question is located in a Light Industrial District, which district permits the following uses:

> A light industrial use in one which creates a minimal amount of nuisance, is conducted entirely within enclosed buildings (except for off-street parking and loading), does not use open area around structures for storage of raw materials or manufactured products and which is not noxious or offensive by reason of the emission of smoke, dust, fumes, gas, odors, noise or vibrations, beyond the confines of the building.

*Id*. at § 7.1. The Ordinance also provides that "[u]ses of land and structures not clearly permitted in the applicable district[] are prohibited." *Id*. at § 7. Among other uses, the Ordinance permits

---

[1] For example, churches must have a minimum lot size of two acres, the area covered must not exceed fifty percent of the total lot area, the maximum building height must adhere to certain yardage requirements, must have access to an arterial street and the parking areas must be buffered from all buildings by at least fifteen feet of landscaped open space. Zoning Ordinance [ECF No. 12-7] § 11.5.A.

3

"educational institutions" and "parks and playgrounds" as permitted uses in a Light Industrial District. *Id.* at § 7.1.A.

The Zoning Ordinance does not define "parks and playgrounds." While the Zoning Ordinance fails to define "educational institutions," it defines "school" as follows:

> Any building or part thereof which is designed, constructed or used for educational purposes. A school shall be licensed by the State, shall meet State requirements for elementary or secondary education, or for institutions of higher learning. Business schools, trade schools, studios, etc., are service establishments and shall be located in commercial districts.

*Id.* at § 3.2. The Ordinance only uses the term "educational institution" once more in the ordinance, naming "schools and other educational institutions" as a conditional use in a Neighborhood Business District. *Id.* at § 6.4.A.(3). The Ordinance otherwise uses the term "educational facilities" in prohibiting sexually oriented establishments from being located within 1000 feet of that specified use, but does not define the term. *Id.* at § 11.5.Q(3). Finally, the Zoning Ordinance allows "schools" as defined, as a conditional use in a residential district. *Id.* at § 5.12.A(4).

On or about March 9, 2015, the Church submitted to Penn Hills an application for a variance allowing it to conduct church services. Variance Application [ECF No. 12-9] at 1. The Penn Hills Planning Department recommended denial of the variance to the Zoning Hearing Board. *See* Penn Hills Planning Dept. Memo. [ECF No. 12-10]. On April 22, 2015, the Penn Hills Zoning Hearing Board held a public hearing regarding the Church's variance application and voted unanimously to deny the Church's variance application. *See* Zoning Hearing Board Minutes [ECF No. 12-11] at 6-7. The Church is presently prohibited from holding worship services at the Property and is only permitted to use the Property for clothing distribution, a food bank and small meetings for Church volunteers and individual counseling. The Church alleges

that they have been holding worship services at alternate locations and that the attendance to its Sunday worship services has decreased from approximately 85 members to 40 members and attendance has dropped as low as 27 members.

The Church brought the instant action against the City on September 4, 2015 alleging the following claims: (1) a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") Equal Terms Claim, 42 U.S.C. § 2000cc(b)(1); (2) a violation of RLUIPA Substantial Burden Claim, 42 U.S.C. § 2000cc(a); (3) a violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1983; (4) a violation of RLUIPA Unreasonable Limitations Claim, 42 U.S.C. § 2000cc(b)(3)(b); and (5) a violation of the Pennsylvania Religious Freedom Protection Act. Shortly thereafter, the Church sought a preliminary injunction based upon its two facial challenges to the Zoning Ordinance under the Unreasonable Limitations provision and the Equal Terms provisions of RLUIPA.

b. Standard of Review

For a plaintiff to obtain a preliminary injunction, it must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 249-50 (3d Cir. 2011), *as amended* (Mar. 7, 2012) (citations omitted). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)). A plaintiff's "failure to establish any element [of the test] renders a preliminary injunction inappropriate." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d

313, 319 (3d Cir. 2015) (quoting *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir.1999)).

    c. <u>Discussion</u>

The Church seeks a preliminary injunction to prevent the City from denying the Plaintiff the use of the Property for religious assembly and worship. The Church argues that it is entitled to a preliminary injunction on its two facial challenges to the Zoning Ordinance under the Equal Terms and Unreasonable Limitations provisions of RLUIPA. The City responds that the Church should not be granted a preliminary injunction because it has failed to show that it is likely to succeed on the merits of either of these claims and that it has failed to show irreparable harm.

The Court will discuss each claim and whether the Church should be entitled to a preliminary injunction based upon that claim.

    i. *Unreasonable Limitations Claim under RLUIPA 42 U.S.C. § 2000cc(b)(3)(B)*

The "Unreasonable Limitations" provision of RLUIPA provides: "No government shall impose or implement a land use regulation that . . . [u]nreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(B). The Church argues that the Zoning Ordinance facially violates RLUIPA by unreasonably restricting religious assembly because it does not allow religious assembly in any zoning district as of right, only allows religious assembly in residential districts as a conditional use and the conditional use approval process itself is an unreasonable limitation.[2] The City responds that the Ordinance does

---

[2] While the Church's brief in support of its Motion for Preliminary Injunction passingly references that it is entitled to a preliminary injunction based upon an as-applied violation of RLUIPA unreasonable limitations provision, at the hearing, counsel for the Church emphasized that for purposes of preliminary injunctive relief and the Church was only asserting facial challenges to the Zoning Ordinance. Therefore, this recommendation will be restricted to the discussion of whether the Church is entitled to a preliminary injunction based upon the Zoning

not unreasonably limit religious assemblies, therefore the Church is unlikely to succeed on the merits of its claim and preliminary injunctive relief should be denied.

It is undisputed that the Zoning Ordinance does not allow churches or places of worship as a permitted use in any of the districts and only allows churches as a conditional use in all residential districts.[3] Nevertheless, limiting churches to a conditional use in residential districts does not unreasonably limit religious assembly because this restriction does not foreclose a church's right to assemble. *See e.g., Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) ("The ban on churches in the industrial zone cannot in itself constitute a substantial burden on religion, because then every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA."). Additionally, a religious institution may seek a variance or special exception under the special exception provision of the Zoning Ordinance. *See* Zoning Ordinance [ECF No. 12-7] at § 12. Further, the Church's argument that the conditional use approval process is an unreasonable limitation on religious assembly because the process is expensive and protracted is also denied. *See e.g., Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (costs, procedural requirements and the "inherent political aspects" of a zoning application process is not a substantial burden on religious exercise). Here, all conditional land uses must follow the same application process, which takes approximately five months for final board determination. *See* Zoning Ordinance [ECF No. 12-7] at §§ 11.3.A., C., F., G., and I. The process, while not immediate, is efficient and reasonable. RLUIPA's unreasonable limitations provision does not protect a religious institution from any and all limitations imposed by a zoning ordinance, only those which are an

---

Ordinance's alleged facially violation of RLUIPA.
[3]   While the Church only brings a facial challenge to the statute, it must be pointed out that 85% of the City is zoned residential.

unreasonable limitation on religious practice. The City's Zoning Ordinance, while it imposes limitations on religious institutions by categorizing them as conditional uses, does not unreasonably limit religious assembly. All other conditional uses in residential districts, including schools, nonprofit community centers, etc., must all endure the same conditional use application process as a religious institution. Lastly, that a use is deemed "conditional" does not mean that the use is not as of right. "An applicant is entitled to a conditional use as a matter of right, unless it is determined, 'that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use.'" *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 2015 WL 5313639, at *6 (Pa.Cmwlth. Sept. 14, 2015) (quoting *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa.Cmwlth. 2009)). *See also Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 991 (7th Cir. 2006) (no violation of § 2000cc(b)(3)(B) even if zoning ordinance granted the zoning hearing board undue discretion to decide a conditional use application).

The Zoning Ordinance on its face does not unreasonably limit the Church in violation of RLUIPA by requiring classifying religious structures as a conditional use in residential zones only requiring an application and approval process. This Court therefore finds that the Church is unlikely to succeed on the merits of its Unreasonable Limitations claim under RLUIPA and recommends that the Church's motion for preliminary injunction on this claim be denied.

*ii. Equal Terms Claim under RLUIPA 42 U.S.C. § 2000cc(b)(1)*

Next, the Church argues that it is entitled to preliminary injunctive relief on its Equal Terms claim under RLUIPA because the Zoning Ordinance treats religious assemblies on less than equal terms with secular assemblies by not allowing churches as a permitted use in the Light Industrial Zone, but allowing parks, playgrounds and educational institutions in that zone as a permitted use.

The Equal Terms provision of RLUIPA provides: "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The Court of Appeals for the Third Circuit has held that a plaintiff alleging an Equal Terms claim under RLUIPA must show: (1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with a (4) nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance. *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 266 (3d Cir. 2007). While Congress failed to define the terms "assembly" or "institution" as used in RLUIPA, the Court of Appeals has defined an "assembly" as "a company of persons gathered together for deliberation and legislation, worship, or entertainment," or "as [a] group of persons organized and united for some common purpose." *Id*. at 284 (citations and internal quotations omitted). Likewise, the Court of Appeals defines "institution" as "an established organization or corporation . . . esp. of a public character." *Id*. (citations omitted).

The Court of Appeals emphasized that "the relevant analysis under the equal terms provision of RLUIPA must take into account the regulation's objectives: a regulation will violate the equal terms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated *as to the regulatory purpose." Id*. at 266 (emphasis in original). In explaining that Congress intended for RLUIPA to codify First Amendment Free Exercise jurisprudence, the Court of Appeals found that "a religious plaintiff under the Equal Terms Provision must identify a better-treated secular comparator that is similarly situated in regard to the *objectives* of the challenged regulation." *Id*. at 268 (emphasis in original). Additionally, a Plaintiff must "do something more than identify *any* nonreligious

9

assembly or institution that enjoys better terms under the land-use regulation." *Id.* at 264 (emphasis in original). Thus, a religious plaintiff alleging an Equal Terms RLUIPA claim must establish more than pleading "that religious institutions are prohibited in a certain area under a zoning code. There must be some evidence, for example, that nonreligious assemblies were permitted but religious assemblies were not." *Miles v. Lansdowne Borough*, No. CIV.A. 11-1913, 2012 WL 5960874, at *8 (E.D. Pa. Nov. 29, 2012) (citing *Lighthouse*, 510 F.3d at 264). However, there is "no need . . . for the religious institution to show that there exists a secular comparator that performs the same functions[]" as the religious institution. *Lighthouse*, 510 F.3d at 266. With this backdrop, a district court "must analyze the purposes of any applicable zoning regulations and whether religious and secular institutions are treated equally in order to satisfy these purposes." *Miles*, 2012 WL 5960874, at *8 (dismissing Equal Terms claim because the religious plaintiff failed to point to a specific zoning regulation and failed to identify any secular assembly treated more favorably).

In *Lighthouse*, the religious plaintiff, ("Lighthouse") purchased space in a commercial district subject to a defendant-city's ordinance which enumerated a number of permitted uses including restaurant, variety store and other retail store, educational service and college, assembly hall, bowling alley, motion picture theater, governmental service, municipal building, and new automobile and boat showrooms. *Lighthouse*, 510 F.3d at 257. A church was not a permitted use under the ordinance. *Id.* Lighthouse submitted an application for a zoning permit to use the Property as a church and was denied because the proposed use was not a permitted use in the zoning district. *Id.* Lighthouse challenged the ordinance under the Equal Terms provision of RLUIPA, and the Court of Appeals found that because the ordinance's aims were not well documented it could not determine from the ordinance "why a church would cause greater harm

to regulatory objectives" than the permitted uses under the ordinance, and that Lighthouse was ultimately entitled to summary judgment. *Id*. at 272-73.[4] *See also Bensalem Masjid, Inc. v. Bensalem Twp.*, No. CV 14-6955, 2015 WL 5611546, at *5 (E.D. Pa. Sept. 22, 2015) (refusing to dismiss RLUIPA Equal Terms claim where the religious plaintiff pleaded several permitted uses on the property that would have much greater harm to the land than the proposed mosque).

It is undisputed that the Church is a religious assembly subject to a land use regulation. What is contested is whether the regulation treats the Church on less than equal terms than a secular assembly and whether the Church would cause greater harm to the regulatory objectives. Plaintiff argues that because parks, playgrounds and educational institutions are permitted as of right in Light Industrial Zones, these qualify as assemblies or institutions treated more favorably than the Church, which is not a permitted use in the Light Industrial Zone. Additionally, Plaintiff argues that the Church does not provide greater harm than parks, playgrounds and educational institutions in light of the Zoning Ordinance's objectives. The City responds that the Church has failed to point to a proper comparator because parks, playgrounds and educational institutions are not similarly situated to religious institutions in accordance with the regulatory purpose of a Light Industrial District.[5]

The Zoning Ordinance does not allow churches or religious institutions as a permitted use in a Light Industrial District, and only allows churches and religious institutions as a conditional

---

[4] The Court of Appeals also noted that because Lighthouse's injunctive relief claim was moot, it was only entitled to damages. *Lighthouse*, 510 F.3d at 273.

[5] At the hearing, much was made of the fact that under the Zoning Ordinance, the term "educational institutions" did not include typical "schools," such as high schools and colleges, under the Zoning Ordinance and as such, an "educational institution" was not an "assembly or institution" under RLUIPA and not a proper comparator to the Church. This point is immaterial. *Lighthouse* clearly points out that a religious plaintiff need not find a perfect comparator, but rather the relevant analysis is whether the land use regulation treats a nonreligious assembly more favorably than a religious assembly with respect to the land use regulation's purposes.

use in a residential district. The Zoning Ordinance allows parks, playgrounds and educational institutions as permitted uses in the Light Industrial District. The challenged Light Industrial District ordinance provides that a use in this district must create a minimal amount of nuisance, must be conducted entirely within enclosed buildings, does not use open area around the structures for storage of raw materials or manufactured products and must not be noxious or offensive by reason of the emission of smoke, dust, fumes, gas, odors, noise or vibrations beyond the confines of the building. Zoning Ordinance [ECF No. 12-7] at § 7.

Here, parks and playgrounds can be interpreted as "assemblies" as they are comprised of a company of persons gathered together for entertainment as those terms are defined by the Court of Appeals. Additionally, "educational institutions," while not defined in the Zoning Ordinance, by its own term is an "institution" and contemplates an organization, especially of public character. Of most importance, however, the City has failed to show how a religious institution would cause greater harm to the Light Industrial District and its objectives than parks, playgrounds and educational institutions. Accordingly, this Court finds at this juncture that the Church is likely to succeed on the merits of its RLUIPA Equal Terms claim.

Finally, the City only challenges whether the Church will suffer irreparable harm if it is not granted preliminary injunctive relief. This Court finds that the Church has suffered irreparable harm. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)). The Church has shown it was denied its right to congregate, and that its congregation has substantially declined since not being able to worship at

the Frey Road building, it has therefore adequately shown irreparable harm.[6]

### III. CONCLUSION

This Report and Recommendation incorporates findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 65(d). For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Preliminary Injunction [ECF No. 12] be granted. Additionally, it is recommended that the Plaintiff post security in the amount of $1,000.00 as required by Federal Rule of Civil Procedure 65(c).

In accordance with Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until November 11, 2015 to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: October 28, 2015

                                                                     Respectfully submitted,

                                                                     /s Robert C. Mitchell
                                                                     ROBERT C. MITCHELL
                                                                     United States Magistrate Judge

cc:     The Honorable David S. Cercone
         United States District Court
         Western District of Pennsylvania
         *Counsel for Plaintiff via CM/ECF electronic filing system*
         Daniel P. Dalton, Esquire
         Lawrence J. Opalewski , Jr., Esquire
         Dalton & Tomich PLC
         719 Griswold Street

---

[6] At the hearing, testimony was given that the building did not comply with the City's fire code. This Court's finding that the Church should be entitled to a preliminary injunction based upon the Zoning Ordinance's violation of RLUIPA in no way interferes with the City's ability to enforce its fire code or any other administrative code that may apply.

Suite 270
Detroit, MI 48226

Lawrence Paladin, Jr., Esquire
Cathy L. Brannigan, Esquire
Paladin Law Offices
15 Duff Road
Suite 6C
Pittsburgh, PA 15235

*Counsel for Defendant via CM/ECF electronic filing system*
Suzanne B. Merrick, Esquire
Katharine L. Platt, Esquire
Thomas, Thomas & Hafer LLP
525 William Penn Place
37th Floor; Suite 3750
Pittsburgh, PA 15219